# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL STEWART,<br><br>　　　　　　　　　　Plaintiff,<br>　　vs.<br>CITY OF SAN DIEGO; PAM ROWLETT; SCOTTY ODOM; JOSE CONDE; JR COPELAND; J KELLY; MICHAEL WALLACE; ADAM SCHROM; DANIEL STANLEY; DENNY KREMER; KEVIN HOLYFIELD; JOHN HUYS; THOMAS McGRATH; STEVEN WITT; MICHAEL BROWN JR.; DONA HUFFORD; WALTER J. RUSSELL; GLENDA PATRICK; A. DOHERTY; WENDY DAVISSON; DOUG SENSABAUGH; and<br><br>　　　　　　　　　　Defendants. | CASE NO. 09cv844-IEG(WMc)<br><br>Order Granting Defendants' Motion for Summary Judgment |

　　　　Plaintiff Michael Stewart, proceeding pro se, filed a Second Amended Complaint on August 9, 2010, alleging Defendant Officer Pam Rowlett ("Rowlett") violated his constitutional rights when (1) she searched him and his car without probable cause on the morning of Saturday, June 14, 2008 [Second Amended Complaint ("SAC"), filed August 9, 2010, Doc. 54, p. 32)], and (2) she cut in front of his car while driving near the intersection of National Avenue and 16th Street on February 23, 2009, causing him to crash and suffer significant injuries [SAC, Doc. 54, p. 30).] Plaintiff further alleges Defendant Police Officers Scotty Odom, Jose Conde, J.R. Copeland, J. Kelly, Michael Wallace, Adam Schrom, Daniel Stanley, Denny Kremer, Kevin Holyfield, John

1  Guys, Thomas McGrath, Steven Witt, Michael Brown, Dona Hufford, Walter Russell, Glenda
2  Patrick, and A. Doherty (collectively "Other Officers"), as well as City Attorney Wendy Davisson
3  ("Davisson") and Investigator Doug Sensabaugh ("Sensabaugh"), engaged in a conspiracy to
4  cover-up the February 23, 2009 matter by submitting a false police report and incident report. [Id.]

5  Defendants now move for summary judgment on all of Plaintiff's claims. For the reasons
6  explained below, the Court GRANTS Defendants' motion.

### *Factual Background*

*1.  The Stop and Search on June 14, 2008*

On the morning of Saturday, June 14, 2008, Plaintiff was sitting in his car on the corner of 14th and Imperial Avenue, adjacent to Father Joe's Village in the East Village of downtown San Diego. [SAC, p.3 (Doc. No. 54, p. 32)[1].] On that date, Defendant Officer Pam Rowlett ("Rowlett") was assigned to the Central Division as a uniformed police officer, in a marked patrol car, patrolling the area near 14th and National Avenue.[2] [Declaration of Officer Pam Rowlett in Support of Motion for Summary Judgment ("Rowlett Decl.) ¶ 5.] As part of her duties, on prior occasions, she had observed people buying and selling drugs from persons sitting in cars in this area. [Id.]

In the early morning hours for several days prior to June 14, 2008, Rowlett observed Plaintiff sitting in a parked late model Infinity Q45, registered to Plaintiff. [Id.] Rowlett saw people walk up to Plaintiff's car, quickly exchange items with him, and then quickly walk away. Alternatively, people would quickly get in and out of the car and then leave the area. [Id.] These

---

[1] Plaintiff included a signature page with his SAC, stating "All statements are true and correct." [SAC, Doc. 54, p. 31.] Plaintiff does not assert his belief in the truth of the matters set forth in the SAC under penalty of perjury as required by Cal. Code Civ. Proc. § 446(a). A verified complaint may, under certain circumstances, suffice as an affidavit in opposition to a motion for summary judgment. California Pro-Life Council v. Randolph, 507 F.3d 1172, 1176 (9th Cir. 2007) ("'A verified complaint may serve as an affidavit for purposes of summary judgment if [1] it is based on personal knowledge and if [2] it sets forth the requisite facts with specificity.'") (quoting Moran v. Selig, 447 F.3d 748, 760 n.16 (9th Cir. 2006) (citation omitted)). Because Plaintiff's SAC is neither signed under penalty of perjury, nor sets forth the requisite facts with specificity, the Court cannot consider it an affidavit for purposes of Rule 56(e). Nonetheless, the Court relies on that pleading to give an overview of Plaintiff's claims.

[2] National Avenue and Imperial Avenue intersect with one another one block from where they each intersect with 14th Street, forming a triangular block.

1  actions were consistent with persons who bought and sold drugs in that area. [Id.]

2  At about 10:40 a.m. on June 14, 2008, Rowlett observed Plaintiff parked at a lot, south of
3  Imperial Avenue on 14th Street. [Rowlett Decl. ¶ 6.] Rowlett was aware Plaintiff had a criminal
4  record for the use and sale of controlled substances, and also had information from other officers
5  that Plaintiff was involved in selling drugs in this area. [Id. ¶ 7.] Rowlett observed a black male
6  walk up to Plaintiff's open car window, and saw Plaintiff swiftly transfer a small package in
7  exchange for another small item she believed to be cash. [Id. ¶ 8.] Based upon her training and
8  experience, Rowlett believed Plaintiff had committed a hand-to-hand drug sale transaction. [Id.
9  ¶ 9.]

10  Rowlett approached Plaintiff while he was still in his car and told him she observed what
11  she believed to be a drug sale. [Rowlett Decl. ¶ 10.] Plaintiff denied involvement with drugs.
12  [Id.] Rowlett arrested Plaintiff under Cal. Health & Safety Code § 11532(a), loitering for drug
13  activities, and placed him in handcuffs. [Id. ¶ 11.] Rowlett searched Plaintiff for drugs but did not
14  find any. She did find cash in Plaintiff's pockets. [Id. ¶ 12.] Rowlett issued Plaintiff a citation,
15  and then released him. [Id. ¶ 13; San Diego Police Department Notice to Appear dated June 14,
16  2008, Exhibit G to Defendants' motion.]

17  Plaintiff asserts Rowlett also searched his car during this interaction. [SAC, Doc. 54, p. 32;
18  Declaration of DeWayne Wilson in Support of Plaintiff's Opposition ("Wilson Decl."), Doc. 68, p.
19  155; Declaration of Ricardo Donaldson, Doc. 68, p. 156; Declaration of Janene Castillo in Support
20  of Plaintiff's Opposition ("Castillo Decl."), Doc. 68, p. 157; Declaration of Kirk Reddick in
21  Support of Plaintiff's Opposition, Doc. 68, p. 158.] Rowlett denies she or any other officer
22  searched Plaintiff's car. [Rowlett Decl. ¶ 12.] As explained below, this dispute of fact is not
23  material for purposes of summary judgment.

24  Immediately after Rowlett released Plaintiff, Plaintiff contacted Rowlett's supervisor,
25  Sergeant Thomas McGrath, about the contact, and demanded the citation be dismissed. [Rowlett
26  Decl. ¶ 16.] Sergeant McGrath refused to dismiss the citation. [Id.] Plaintiff alleges that at the
27  time of his interaction with Rowlett, he was homeless and waiting for resources to become
28  available at St. Vincent DePaul at 11:00 a.m. [SAC, Doc. 54, p. 32).] Plaintiff also asserts

1  Rowlett harassed and illegally searched him on two prior unidentified occasions at the same
2  location. [Id.; Castillo Decl.; Wilson Decl.]
3  *2.    The Car Accident on February 23, 2009*
4       At approximately 10:50 p.m. on February 23, 2009, Plaintiff was driving in the right-hand
5  lane traveling eastbound on National Avenue. [SAC, Doc. 54, p. 30.] He noticed a police car
6  being driven by Officer Rowlett pulling up beside him in the left lane. Rowlett maintained the
7  same speed as Plaintiff until they reached to the intersection of National Avenue and 16th Street.
8  At that intersection, without any warning, Rowlett cut in front of Plaintiff from a left turn only
9  lane. [Declaration of Douglas Miller in Support of Plaintiff's Opposition, Doc. 68, p. 162.]
10 Plaintiff lost control of his car and crashed into a street lamp, receiving serious injuries. Plaintiff
11 initially had no memory of the accident, but alleges his memory returned in March. After his
12 memory returned, Plaintiff was shocked to learn the officers covered up what happened at the
13 scene. [SAC, Doc. 54, p. 30.]
14      While Plaintiff was still at the UCSD Medical Center in Hillcrest, receiving treatment for
15 his injuries, Plaintiff made the following statement to the investigating officer, Officer Witt:

> I got into my car to move it, but I'm not sure where. I was going
> down Imperial Avenue, that's the last thing I remember. I was
> driving and eating pizza. I could have been going to the corner store
> to get cigarettes, but I don't know. No one was in the car, but me. I
> really don't know what happened.

19 [Traffic Collision Report prepared by Officer Witt, Exhibit B to Defendants' Motion, p. 13.]
20 When Witt interviewed Plaintiff he noticed Plaintiff's eyes were bloodshot and "Stewart was
21 slurring his words and having trouble forming his words." [Id.] Plaintiff's blood was drawn at the
22 hospital and it tested positive for opiates, and 4 ng/mL of Morphine. [Bio-Tox Laboratories report
23 dated March 2, 2009, Exhibit C to Defendants' Motion.]
24      Plaintiff's friend, Douglas Miller, who has submitted a declaration in opposition to
25 Defendants' motion, gave the following statement to Officer Copeland after the accident:

> I was standing outside urinating when I heard a crash. I turned and
> saw my friend, Mike, in a car that had hit a pole. I walked over and
> asked if he was okay? He said that he needed to get some sleep. I
> told him to get in the back seat and I moved his car for him.

28 [Traffic Collision Report prepared by Officer Copeland, Exhibit D to Defendants' Motion, p. 5.]

1       At the time of the accident on February 23, 2009, Rowlett was assigned to the Central Division, working in full uniform and patrolling in a two officer unit with Officer Rex Cole. [Rowlett Decl. ¶ 17.] Rowlett states she was not involved in an accident with Plaintiff and did not see the collision. [Id. ¶ 18.] On the evening of the accident, Rowlett and her partner, Rex Cole, transported a female prisoner to Las Colinas Jail in Santee for booking at 8:50 p.m. [Declaration of Rex Cole ("Cole Decl.," ¶ 7.] After booking the female prisoner into Las Colinas, Rowlett and Cole returned to San Diego. At 10:02 p.m., the two were parked at 8th Avenue and J Street writing reports. [Cole Decl., ¶ 8.] The San Diego Police Department ("SDPD") Global Mapping System ("GPS") confirms that Rowlett's SDPD vehicle was parked at 8th Avenue and J Street with six other SDPD police units at about the time the incident occurred. [Declaration of Joseph Maggio in Support of Motion ("Maggio Decl."), Exhibit F to Defendants' Motion, ¶ 10.] At 10:56 p.m., Rowlett and Cole received a radio message regarding an accident involving Plaintiff. [Cole Decl., ¶ 9.] The GPS records further indicate no SDPD marked police vehicle was in the area of National Avenue and 16th Street at the time of Plaintiff's accident. [Maggio Decl., ¶ 8.]

### *Procedural History*

Plaintiff originally filed his Complaint in San Diego County Superior Court on April 15, 2009, naming Officer Rowlett and the City of San Diego as Defendants. The City of San Diego removed the action on April 22, 2009. [Doc. 1.] Defendants moved to dismiss the Complaint [Doc. 5], and Plaintiff responded by seeking leave to amend. [Doc. 9.] The Court granted Plaintiff leave to amend and denied as moot the City's motion to dismiss. [Doc.17.] Plaintiff filed his first amended complaint on June 30, 2009, naming numerous additional individual officers as Defendants. [Doc. 18.] Defendants City of San Diego and Rowlett filed an answer on July 7, 2009. [Doc. 19.] Plaintiff served the remaining individual officer Defendants in July and August of 2010, after the Court set the matter for a hearing under Fed. R. Civ. P. 4(m).

On August 9, 2010, Plaintiff filed a Second Amended Complaint ("SAC"). [Doc. 54.] All Defendants filed an answer to the SAC on August 24, 2010. [Doc. 57.] Plaintiff attempted to file a Third Amended Complaint on September 10, 2010, but the Court rejected the document because Plaintiff did not seek prior leave of Court. [Docs. 58 and 59.]

1  Defendants filed the current motion for summary judgment on September 10, 2009. In
2  response, Plaintiff has filed a number of documents. [Docs. 68, 77, 80.] In addition, Plaintiff has
3  filed a motion for leave to add a cause of action for retaliation. [Doc. 71.] Just prior to the hearing
4  on Plaintiff's motion, Magistrate Judge McCurine held a hearing on two pending discovery
5  motions filed by Plaintiff [Docs. 73 and 75]. Judge McCurine ordered Officer Rowlett and her
6  partner to both provide Plaintiff with declarations regarding their whereabouts one hour before and
7  one hour after the incident and identify the location of Rowlett's squad car for that same time
8  period. Judge McCurine also ordered Officer Rowlett to provide a declaration that she did not seek
9  medical attention and was not injured on the date of the incident. Finally, Judge McCurine
10 ordered Defendant to produce, for *in camera* review, Officer Rowlett's personnel records. [Doc.
11 No. 84.] Defendants filed the declarations required by Judge McCurine's order on November 8,
12 2010 [Doc. 86]. Following *in camera* review, Judge McCurine ordered Defendant to produce
13 certain documents from Officer Rowlett's personnel file. [Doc. No. 88.][3]

### *Legal Standard*

15  Summary judgment is proper where the pleadings and materials demonstrate "there is no
16 genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."
17 Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of
18 fact is a question a trier of fact must answer to determine the rights of the parties under the
19 applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute
20 is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
21 party." Id.

22  The moving party bears "the initial responsibility of informing the district court of the basis
23 for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate
24 that no genuine issue of material fact exists for trial. Id. at 322. Where the moving party does not

---

[3] Plaintiff did not request a continuance of the summary judgment motion to allow this discovery to be completed. Nonetheless, the Court withheld its decision pending Magistrate Judge McCurine's ruling on the pending discovery. In addition, after Magistrate Judge McCurine issued his order, the Court reviewed the documents lodged for *in camera* review, to determine if any of those materials were relevant or had any impact upon the Defendants' summary judgment motion. Upon review, the Court concludes nothing in the privileged documents lodged by Defendant for *in camera* review creates a genuine issue of material fact precluding summary judgment.

1  have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one
2  of two ways: "The moving party may produce evidence negating an essential element of the
3  nonmoving party's case, or, after suitable discovery, the moving party may show that the
4  nonmoving party does not have enough evidence of an essential element of its claim or defense to
5  carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210
6  F.3d 1099, 1106 (9th Cir. 2000). To withstand a motion for summary judgment, the non-movant
7  must then show that there are genuine factual issues which can only be resolved by the trier of
8  fact. Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). The non-moving
9  party may not rely on the pleadings alone, but must present specific facts creating a genuine issue
10 of material fact through affidavits, depositions, or answers to interrogatories. Fed. R. Civ. P.
11 56(e); Celotex, 477 U.S. at 324.

12       The court must review the record as a whole and draw all reasonable inferences in favor of
13 the non-moving party. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).
14 However, unsupported conjecture or conclusory statements are insufficient to defeat summary
15 judgment. Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Moreover,
16 the court is not required "'to scour the record in search of a genuine issue of triable fact,'" Keenan
17 v. Allan, 91 F.3d 1275, 1279 (9th Cir.1996) (citations omitted), but rather "may limit its review to
18 the documents submitted for purposes of summary judgment and those parts of the record
19 specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030
20 (9th Cir. 2001).

21                                        ***Discussion***

22       Section 1983 imposes two essential proof requirements upon a plaintiff: (1) that a person
23 acting under color of state law committed the conduct at issue; and (2) that the conduct deprived
24 the claimant of some right, privilege, or immunity protected by the Constitution or laws of the
25 United States. 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other
26 grounds by Daniels v. Williams, 474 U.S. 327, 328 (1986); see Haygood v. Younger, 769
27 F.2d 1350, 1354 (9th Cir. 1985) (en banc). Even where a plaintiff establishes violation of his
28 constitutional rights, an officer is entitled to qualified immunity unless plaintiff demonstrates the

1  officer's conduct violated clearly established federal right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201
2  (2001).

### 1. *The Stop and Search on June 14, 2008*

Plaintiff does not specify what right Defendant Pamela Rowlett violated with regard to the June 14, 2008 stop and search. The Fourth Amendment protects citizens from unreasonable searches and seizures, and generally prohibits searches without a warrant. <u>United States v. Smith</u>, 389 F.3d 944, 950 (9th Cir. 2004). In determining whether an arresting officer has probable cause to make a warrantless arrest, courts must consider "all the facts known to the officers and consider all the reasonable inferences that could be drawn by them before the arrest." <u>United States v. Martin</u>, 509 F.2d 1211, 1213 (9th Cir. 1975). "'Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed'." <u>Brooks v. City of Seattle</u>, 599 F.3d 1018, 1023 (9th Cir. 2010) (quoting <u>Lassiter v. City of Bremerton</u>, 556 F.3d 1049, 1053 (9th Cir. 2009)).

Here, Rowlett's declaration establishes she had probable cause to arrest Plaintiff on June 14, 2008. Rowlett observed Plaintiff parked at this location for several days prior to this arrest, and observed Plaintiff and other persons engaging in activity consistent with the sale and purchase of drugs. Rowlett also had information from other officers that Plaintiff was involved in drug sales in the area, and Rowlett was aware Plaintiff had a criminal record for the use and sales of controlled drugs. Rowlett observed a man walk up to Plaintiff's open car window, and swiftly transfer a small package to Plaintiff in exchange for what appeared to be cash. [Rowlett Decl. ¶ 8.] Based upon these facts, a reasonably prudent person would have cause to believe a crime had been committed. Neither Plaintiff's unverified allegations in the SAC, nor the declarations he has submitted from other individuals in opposition to the summary judgment motion, address the facts set forth in Rowlett's declaration. Plaintiff alleges in his SAC that he did not have drugs and he was only waiting to use resources at St. Vincent DePaul. He does not, however, dispute the facts set forth in Rowlett's declaration.

Searches incident to arrest, limited to the area within the arrestee's immediate control, are exempted from the warrant and probable cause requirements of the Fourth Amendment. <u>United</u>

1  States v. Caseres, 533 F.3d 0164, 1070 (9th Cir. 2008).  In addition, automobiles, because of their
2  inherent mobility, may be searched without a warrant so long as the search is supported by
3  probable cause or by some other Fourth Amendment exception applies.  Id.  Officers may search
4  the inside of the vehicle incident to an arrest so long as the defendant was a "recent occupant" of
5  the vehicle.  Id. at 1071.  Here, Rowlett states she did not search Plaintiff's car.  Even if the Court
6  accepts Plaintiff's version of the facts, however, Rowlett's search took place immediately after
7  Plaintiff's arrest.  Plaintiff was a "recent occupant" of the vehicle.  Therefore, even if Rowlett
8  searched Plaintiff's vehicle, that search was authorized by law and did not violate the Fourth
9  Amendment.

10  Because Plaintiff has not demonstrated Rowlett violated his constitutional rights, Rowlett
11  is entitled to qualified immunity on Plaintiff's claims arising from the alleged June 14, 2008 stop
12  and search.

13  *2.    The Car Accident on February 23, 2009*

14  The court must, in considering a summary judgment motion, view the facts in the light
15  most favorable to the nonmoving party.  Fed. R. Civ. P. 56(c).  However, "[w]hen the moving
16  party has carried its burden under Rule 56(c), its opponent must do more than simply show that
17  there is some metaphysical doubt as to the material facts .... Where the record taken as a whole
18  could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
19  trial'."  Matsushita Elec., 475 U.S. at 586-87.  "When opposing parties tell two different stories,
20  one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a
21  court should not adopt that version of the facts for purposes of ruling on a motion for summary
22  judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

23  Here, Defendants have submitted a declaration establishing that, according to SDPD GPS
24  tracking records, neither Rowlett nor any other SDPD marked police car was at the place where
25  Plaintiff wrecked his car on February 23, 2009.  [Maggio Decl. ¶ 9 and 10.]  Rowlett has stated
26  under penalty of perjury, that she was not involved in the collision.  [Rowlett Decl. ¶ 18.]
27  Defendants have also provided a declaration by Rowlett's partner, that the two of them were
28  parked near 8th Avenue and J Streets writing reports from 10:02 p.m. until they received the call

regarding the accident at 10:56 p.m. [Declaration of S.D.P.D. Officer Rex Cole, ¶ 8.] Even Plaintiff's statement immediately after the accident contradicts his allegations in the SAC regarding Rowlett's conduct.

In opposition to Defendants' motion, Plaintiff submits a declaration from Douglas Miller stating he saw a police car cut Plaintiff off. This declaration, however, is also contrary to the statement Miller made to officers immediately after the accident. In addition, Miller does not identify the driver of the car or affirmatively state that Rowlett was driving the police car. Plaintiff has submitted extensive police dispatch records and the CDs of the dispatch conversations, and argues there is a dispute of fact as to whether there was a second car involved in the February 23, 2009 accident. Having reviewed the reports and listened to the dispatch CDs, the Court finds no information therein which creates a genuine issue of material fact regarding Rowlett's involvement in Plaintiff's car accident. Even if there was a second car involved, Plaintiff has submitted no evidence demonstrating Rowlett was the driver of that car.

Finally, Plaintiff fails to identify any constitutional right Rowlett allegedly violated based upon the February 23, 2009 accident. At most, Plaintiff's allegations establish Rowlett may have cut in front of him in traffic. Poor driving does not violate the constitution. In his proposed third amended complaint filed on September 27, 2010 [Doc. 71-1], Plaintiff alleges Officer Rowlett caused him to wreck his car on February 23, 2009 in retaliation for his pending lawsuit against her. However, Plaintiff's complaint in this case was filed *after* the February 23, 2009 accident. There are no other facts from which the Court could conclude Plaintiff has a constitutional claim against Rowlett. Rowlett is, therefore, entitled to summary judgment on Plaintiff's claim based upon the alleged February 23, 2009 incident.

### 3. *Individual Officer Defendants*

In his SAC, Plaintiff alleges the Other Officers, Davisson, and Sensabough acted in concert to cover up Rowlett's alleged involvement in the accident. Plaintiff provides no facts in support of his claim, and sets forth no legal theory upon which these Defendants could be held liable under 42 U.S.C. § 1983. Plaintiff cites Cal. Penal Code § 182(a)(5), which prohibits criminal conspiracies to pervert or obstruct justice. However, California law provides no private cause of

action under that statute.  Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir. 1993) (the penal code section does not create enforceable individual rights).  These Defendants are entitled to summary judgment.

*4.      City of San Diego*

Finally, the City of San Diego seeks summary judgment on grounds that Plaintiff has failed to identify, and no evidence in the record exists, to show any municipal policy or procedure related to either the June 14, 2008 stop and search or the February 23, 2009 incident.

"[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Department of Social Services, 436 U.S. 658, 691 (1978); Gibson v. County of Washoe, 290 F.3d 1175, 1185 (9th Cir. 2002).  A municipality may be liable under § 1983 for monetary, declaratory, or injunctive relief where the constitutional deprivation was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690; Board of the County Commissioners v. Brown, 520 U.S. 397, 402-04 (1997); Navarro v. Block, 72 F.3d 712, 714 (9th Cir. 1995).

To establish municipal liability, plaintiff must show:  (1) he was deprived of a constitutional right;  (2) the city had a policy; (3) the policy amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy was the "moving force behind the constitutional violation."  Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); Brown, 520 U.S. at 402-04; Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).  Thus, municipal liability depends in part, on the showing of a "causal link between the municipal action and the deprivation of federal rights."  Brown, 520 U.S. at 402-04; Monell, 436 U.S. at  691; Gibson, 290 F.3d at 1185-87.

Plaintiff has failed to demonstrate the individual Defendants violated his constitutional rights, and has set forth no facts to establish liability on behalf of the City.  Therefore, the Court GRANTS the City's motion for summary judgment.

### *Conclusion*

For the reasons set forth herein the Court GRANTS Defendants' motion for summary

judgment in its entirety. The Court DENIES Plaintiff leave to further amend his complaint. The Clerk shall enter judgment according to this order and close the case.

**IT IS SO ORDERED**.

**DATED: December 6, 2010**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**